

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed January 25, 2021

_United States Bankruptcy Judge_

___

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| SHAYNE ALLAN STEEN and | § | Case No.: 20-50042-RLJ-13 |
| TRACIE MELISSA COLE, | § | |
| | § | |
| Debtors. | § | |
| | § | |
| KIMBERLY JOHNSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adversary No. 20-05004 |
| | § | |
| SHAYNE ALLAN STEEN, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

Kimberly Johnson (Kimberly), the ex-wife of the chapter 13 debtor Shayne Steen (Shayne), filed this action seeking a determination that the debt owed to her by Shayne is nondischargeable under § 523(a)(4) of the Bankruptcy Code.[1] Kimberly alleges that Shayne, in

___

[1] All § references refer to 11 U.S.C. unless otherwise stated.

their divorce proceeding, fraudulently obtained her community interest in two pieces of real property by convincing her to transfer her community interest in the couple's real property without paying her for that interest. The divorce decree awarded the properties to Shayne and required that he pay Kimberly for her community share. But Shayne never paid Kimberly; instead, he sold or transferred the properties without accounting back to Kimberly. Shayne then filed this chapter 13 bankruptcy with his current wife. The Court considers Shayne's motion asking for dismissal under Rule 12(b)(6) for failure to state a compensable claim, arguing that the debt arising from his acts is properly classified under § 523(a)(15), which *is dischargeable* in chapter 13.[2] For the reasons stated below, the Court grants the motion to dismiss.[3]

I.

Alleged Facts

The facts alleged by the complaint are taken as true. Kimberly and Shayne filed for divorce in June 2017. Kimberly was the Petitioner and Shayne was the Respondent. (Shayne was represented by Abel Reyna, Jr.; Kimberly was represented by counsel initially but, given her inability to pay attorneys' fees, ended up representing herself.) On May 30, 2018, the judge presiding over the divorce orally announced his ruling on the issues raised in the divorce. A written order was not entered until mid-August.

This action concerns the two pieces of real property that were awarded to Shayne in the divorce—the "Green Street" property and the "14th Street" property. To account for Kimberly's interest in the Green Street property, the divorce decree provided that it be sold, with the net sales proceeds split 50/50, or, alternatively, that Shayne pay Kimberly $6,420 within 90 days

---

[2] "Rule" refers to a rule of the Federal Rules of Civil Procedure, unless otherwise stated.
[3] The motion to dismiss also included dismissal under Rule 12(b)(5) for failure to properly serve the complaint on the defendant, but the foundation for that claim was rectified and is no longer a point of contention.

after the decree was signed, in which case he would "not be obligated to sell the residence." Doc. No. 1 at 4 (quoting divorce decree). As for the 14th Street property, the court "impose[d] an incumbrance for owelty of partition against the entirety of the property to secure payment of the debt resulting from the award" of property ownership to Shayne. *Id.* The encumbrance was to secure payment in the amount of "fifteen thousand four hundred fifty-nine dollars and eight-one [sic] cents ($15,337.00)."[4] *Id.* The decree states that "[t]o further evidence the debt, Petitioner [Kimberly] [was] ORDERED to sign a note payable to Respondent [Shayne] in the amount of the debt specified above and payable according to the terms specified above. Petitioner [Kimberly] is FURTHER ORDERED to sign a deed of trust to secure payment of the debt resulting from the owelty of partition." *Id.* (The decree mistakenly switched Petitioner and Respondent; Shayne would be issuing a note and deed of trust *to* Kimberly.) The note was to be "payable 180 days from the signing of [the] decree, by cash, cashier's check, or money order, as her interest in the 1611 14th Street, Wilson, Texas, property." Def.'s Ex. 1 at 32 (Divorce Decree).

In July, before the divorce decree had been signed by the judge, Kimberly went to Shayne's attorney's office to sign several documents. She signed a Special Warranty Deed to convey her interest in the 14th Street property to Shayne and an Assumption Special Warranty Deed to convey her interest in the Green Street property to Shayne.[5] On August 16, 2018, after the divorce decree was signed, Kimberly was asked to go to Shayne's attorney's office to sign the same documents again, which she did. There is no allegation that Shayne ever signed a deed

---

[4] It is unclear what amount was actually meant since the divorce decree spells out $15,459.81 but writes $15,337.00 in numerals.

[5] The complaint mistakenly states that "Kimbely" Steen signed a Special Warranty Deed conveying the Green Street property as well as an Assumption Special Warranty Deed conveying the Green Street property. Doc. No. 1 at 5. These documents were admitted into evidence. The Special Warranty Deed conveys the 14th Street property, not the Green Street property.

of trust or a note to Kimberly as a part of the owelty of partition for her interest in the 14th Street property.

On August 27, 2018, two weeks after the divorce was finalized, Shayne transferred ownership of the 14th Street property to his mother for $10,000. The debtors' Statement of Financial Affairs lists the property with a value of $35,030 and claims that Shayne's mother had been residing at the 14th Street property for several years. *See* Doc. No. 1 ¶ 6. The Statement of Financial Affairs also states that Shayne's mother was purchasing the home from Shayne, completing payments to him in 2018 with the final $10,000 payment resulting in title transfer. *Id*.

Ten months later, Shayne sold the Green Street property; he discloses in his bankruptcy schedules that he received no proceeds from the sale after paying closing costs and a $68,000 lien held by Wells Fargo. *Id*. ¶ 5. The same disclosure states that the value of the property was $78,000. *Id*. The complaint alleges that the Green Street property was actually valued at $86,000, according to the Inventory filed with the divorce court. (The divorce decree provided that the house was to be sold under certain conditions, none of which were followed by Shayne.[6])

The complaint alleges Shayne "obtained these two properties . . . and subsequently sold or transferred them, in spite of the fact that he obtained his ex-spouse's (the claimant) property interest fraudulently." *Id*. ¶ 8.

---

[6] The complaint does not allege a specific time in which the house had to be sold, and upon review of the divorce decree, there was not a time established, only that Shayne was to pay Kimberly $6,420 if he chose not to sell the house. Additionally, the divorce decree says it would be sold for a price that is mutually agreeable between Kimberly and Shayne, which presumably did not happen. The only thing in the complaint that alludes to this is the allegation that Shayne "never complied with the divorce decree commandants." Doc. No. 1 ¶ 15.

II.

Arguments of the Parties

Kimberly alleges that "by converting [her] property interest, [Shayne] committed embezzlement," and that he obtained Kimberly's property interests fraudulently "by convincing Kimberly . . . to transfer her interests in the couple's real property without providing to her any consideration." Doc. No. 1 at 6, 7. The divorce decree, Kimberly argues, required that Shayne acknowledge and account for Kimberly's interests in the properties. She says that Shayne failed to honor his obligations to her when he transferred the Green Street and 14th Street properties without paying her for her interest in the properties, as required by the divorce decree. Kimberly concedes that Shayne was given lawful control of the Green Street and 14th Street properties under the divorce decree.

Shayne admits that he has a financial obligation to Kimberly arising from the division of marital property, that he sold or transferred the properties post-divorce, and that he failed to pay Kimberley any of the proceeds received from the transfer of the 14th Street property or the amount ordered by the divorce decree. Shayne argues, however, that the complaint fails to allege a factual or legal basis to support an embezzlement claim. He says the allegations support a § 523(a)(15) claim, as one arising from the divorce decree and not from the sale or transfer of the properties. The properties were his alone per the divorce decree, and one cannot embezzle one's own property, he says.

Debts to a former spouse that are incurred in the course of a divorce but are not in the nature of support are addressed at § 523(a)(15). While such debts are not dischargeable under chapter 7, they are dischargeable under § 1328(a) of chapter 13. Shayne argues that even accepting all of Kimberly's allegations as true does not change the nature of her claim from one

5

under § 523(a)(15) to one under § 523(a)(4).[7] Shayne says that it is undisputed that the properties were awarded to him under the divorce decree, which thus deprived Kimberly of any ownership interest in the properties. Without any ownership interests, "[a]ny subsequent transfers of the property by defendant were not actions taken with respect to property belonging to plaintiff" and therefore could not have been embezzlement because embezzlement can only arise "from the debtor's acquisition or use of property that is not the debtor's." Doc. No. 5 at 6. Because Kimberly's claim does not arise from an act of embezzlement, Shayne argues, the Court must dismiss the action.

### III.
### Motion to Dismiss Standard under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a case if a plaintiff fails "to state a claim upon which relief can be granted." This rule applies in adversary proceedings as incorporated by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure. Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim satisfies the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [*Twombly*'s] plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal citations omitted). While a complaint need not

---

[7] To the extent Shayne argues this point as the core basis of his motion, the Court rejects it. Just because the alleged facts fit better within one legal theory does not mean that they cannot support a claim under another legal theory.

contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). But the federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam). "Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth 'enough factual matter (taken as true) to suggest' a cognizable cause of action, 'even if … [the] actual proof of those facts is improbable and … recovery is very remote and unlikely.'" *Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 500 (D. Md. 2019) (quoting *Twombly*, 550 U.S. at 556).

"'A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer' that the plaintiff is entitled to the legal remedy sought." *Id*. (quoting *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011)).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). In ruling on such a motion, the court cannot look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Matters outside the pleadings, though, do not generally include "items of unquestioned authenticity that are referred to in the challenged pleading and are 'central' or 'integral' to the pleader's claim for relief." *Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 785 (5th Cir. 2007) (citation omitted). As such, "[t]he court also can properly

consider documents presented by the defendant that are referenced in the complaint and are central to the plaintiff's claims." *Hill v. Int'l Assoc. of Machinists and Aerospace Workers, AFL-CIO*, No. 18-cv-4669, 2019 WL 4544129, at *3 (S.D. Tex. Sept. 19, 2019) (looking at an agreement that was a docketed exhibit attached to defendant's brief in support of its motion to dismiss).

While there were several exhibits admitted into evidence at the hearing, the Court considers only the complaint, the motion to dismiss, and the divorce decree that is incorporated by reference in the complaint.

IV.

Law

1. What is an Owelty of Partition?

"Bankruptcy courts must pay deference to state laws when it comes to defining property interests." *Blackhawk Network Cal., Inc. v. Alco Stores, Inc. (In re Alco Stores, Inc.)*, 536 B.R. 383, 412 (Bankr. N.D. Tex. 2015). A point of contention in this case concerns Kimberly's property rights and, particularly, her owelty of partition on the 14th Street property. Though the case law on owelty (of partition) in Texas is limited, it does reflect that it can have slightly different meanings depending on the context in which the owelty of partition arises. In a divorce context, "it is a term used when one spouse buys the homestead interest of the other spouse and the selling spouse obtains a lien to secure payment of the conveyed interest. The lien is often described as an owelty deed or owelty of partition and permits the selling or conveying spouse to have a security interest against all of the property." John F. Elder, § 12:9 Homestead—Rights, limitations, exemptions, 33 Tex. Prac., Handbook Of Texas Family Law § 12:9 (Dec. 2019 update). In other words, an owelty lien against "community property [is] to secure one spouse's

obligation to pay a monetary award that represents the consideration for the other spouse's relinquishment of his or her interest in the marital estate." *Magallanez v. Magallanez*, 911 S.W.2d 91, 94 (Tex. App.—El Paso 1995, no writ).[8]

"[O]welty liens are a form of purchase-money lien." *McNally v. McNally*, No. 02-18-00142-CV, 2020 WL 5241189, at *7 (Tex. App.—Fort Worth Sept. 3, 2020, no pet. h.) (citing *Sayers v. Pyland*, 139 Tex. 57, 161 S.W.2d 769, 772 (Tex. 1942) ("the owelty so assessed in adjusting the equities is recognized as being in the nature of purchase money secured by a vendor's lien")). Payment of the owelty lien "is not a condition precedent to the vesting of [awarded property] in the party to whom it is [awarded]"; instead, an owelty lien "creates an incumbrance in the nature of a vendor's lien." *Sayers v. Pyland*, 139 Tex. at 62, 161 S.W.2d at 772;[9] *see also Hankins v. Harris*, 500 S.W.3d 140, 146 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (stating that the holder of the purchase money vendor's lien that is created from divorce property division "no longer has title to the property, but she can use it as an encumbrance against the property to satisfy the debt"). The individual awarded the property is therefore the owner of the property, and the individual awarded an owelty lien is divested of any interest save for the lien against the property.

---

[8] This case dealt with an equitable lien and not an owelty lien. Both types of liens can be awarded in divorce decrees, functioning essentially in the same manner. There appears to be only a technical difference between the two as to what each lien can be imposed for: an equitable lien is typically for reimbursement, while an owelty lien may be used to balance the fairness and equities of a property award. *See Heggen v. Pemelton*, 836 S.W.2d 145, 146 (Tex. 1992); *Suggs v. Suggs*, 2-09-018-CV, 2010 WL 3195750, at *3–4 (Tex. App.—Fort Worth Aug. 12, 2010, no pet.). Many courts do not parse out this technicality and lump the two together or use the two terms interchangeably. *See, e.g.*, *In re Rieves*, No. 11-61125, 2012 WL 2952173, at *4 (Bankr. W.D. Tex. July 18, 2012) (describing the language in a divorce decree that described a lien on the homestead as both an equitable lien and owelty lien of partition); *Johnson v. Johnson*, No. 03-02-00427-CV, 2005 WL 3440773, at *8 (Tex. App.—Austin Dec. 16, 2005, no pet.) (divorce decree awarding an equitable lien, in the nature of a purchase money lien, for just and right distribution and not for reimbursement).

[9] The case further states that the incumbrance created "becomes a valid charge upon the purpart against which it was decreed, which follows the land into the hands of third parties." *Id*.

The teeth behind an owelty lien is the ability of the spouse who was granted an owelty of partition lien to foreclose on the property to satisfy her claim. *See, e.g.*, *Svacina v. Gardner*, 905 S.W.2d 780 (Tex. App.—Texarkana 1995, no writ) (holder of owelty lien successfully sued for foreclosure on property). To enforce the owelty lien, like a purchase money lien, a deed memorializing the lien should be recorded with the county clerk. If "no express lien is reserved in a deed" and the owelty has not been paid, the lienholder may enforce the lien "in a suit brought for that purpose." *McGoodwin v. McGoodwin*, 671 S.W.2d 880, 882 (Tex. 1984); *see also Kimsey v. Kimsey*, 965 S.W.2d 690, 698 (Tex. App.—El Paso 1998, pet. denied) (without promissory note and deed of trust, right to judicial foreclosure remains in event of default). The instance in which a lien is not recorded and the property is sold before the lienholder can seek judicial foreclosure leaves the lienholder in an unsecured creditor position. *See* John F. Elder, 17 West's Tex. Forms, Family Law § 6:77 (4th ed.) (Property—Judgment to Equalize Property Division) (Oct. 2019 update) (stating that an owelty lien that is essentially reduced to a note or judgment "may be dischargeable in bankruptcy" making it "important to obtain a secured position").

2. Embezzlement

Section 523(a)(4) of the Bankruptcy Code provides that a debt arising from the debtor's embezzlement is not discharged. For purposes of § 523(a)(4), federal law controls the meaning of embezzlement. *In re Hayden*, 248 B.R. 519, 525 (Bankr. N.D. Tex. 2000). The Supreme Court has defined embezzlement as "the fraudulent appropriation of property by a person to whom such property has been intrusted, or into whose hands it has lawfully come." *Moore v. United States*, 160 U.S. 268, 269 (1895). This definition has been adopted in the Fifth Circuit. *Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 602 (5th Cir. 1998). Embezzlement

requires three elements: "(1) appropriation of funds by the debtor; (2) for the debtor's use or benefit; and (3) with fraudulent intent." *Rainey v. Davenport (In re Davenport)*, 353 B.R. 150, 199–200 (Bankr. S.D. Tex. 2006).

Appropriation, the first element, must be of property belonging to someone other than the debtor because embezzlement "involve[s] debts arising from the debtor's acquisition or use of property that is not the debtor's." *Boyle v. Abilene Lumber, Inc. (In re Boyle)*, 819 F.2d 583, 588 (5th Cir. 1987) (overturned for other reasons). It is settled that "[n]o person can embezzle from himself." *Franklin Bank, S.S.B. v. Barnes (In re Barnes)*, 369 B.R. 298, 306 (Bankr. W.D. Tex. 2007) (selling bank's collateral and not remitting the proceeds does not constitute embezzlement) (quotation marks and citation omitted); *see also Winn v. Holdaway (In re Holdaway)*, 388 B.R. 767, 778 (Bankr. S.D. Tex. 2008) ("To constitute embezzlement, the fraudulent appropriation must be 'of another's property.'"); *Am. Nat'l Ins. Co. v. Bossier (In re Bossier)*, No. 11-06002, 2012 WL 2891215, at *7 (Bankr. W.D. Tex. July 16, 2012) ("no person can embezzle from himself").[10]

The second element is not contested here.

As for the third element, bankruptcy courts in the Fifth Circuit have held that fraudulent intent is "an intent to deceive another person and thereby induce such other person to transfer, alter or terminate a right with respect to property," which intent "may be inferred from the

---

[10] *See, e.g.*, *Reshetar Systems, Inc. v. Thompson (In re Thompson)*, 686 F.3d 940, 947 (8th Cir. 2012); *Chiti v. Spectrum Golf, Inc. (In re Spectrum Golf, Inc.)*, No. AZ-06-1346, 2007 WL 7540965, at *7 (B.A.P. 9th Cir. Aug. 16, 2007); *Kapish v. Cruz-Brewer (In re Cruz-Brewer)*, 609 B.R. 1, 9 (Bankr. M.D. Penn. 2019); *Cloninger v. Cloninger (In re Cloninger)*, 548 B.R. 839, 860 (Bankr. N.D. Ga. 2016); *Morganroth & Morganroth, PLLC v. Stollman (In re Stollman)*, 404 B.R. 244, 272 (Bankr. E.D. Mich. 2009); *Oak Street Funding LLC v. Brown (In re Brown)*, 399 B.R. 44, 47–48 (Bankr. N.D. Ind. 2008); *Danbury, Inc. v. Scheller (In re Scheller)*, 265 B.R. 39, 54 (Bankr. S.D.N.Y. 2001); *Maneval v. Davis (In re Davis)*, 155 B.R. 123, 131 (Bankr. E.D. Va. 1993); *Adams v. Hernandez (In re Hernandez)*, No. 13-1272, 2014 WL 2609795, at *7 (Bankr. D. Colo. June 11, 2014); *Goss v. Parkins (In re Parkins)*, No. 12-5025, 2012 WL 7749187, at *7 (Bankr. E.D. Tenn. Dec. 7, 2012).

conduct of the Debtor and from the circumstances of the situation." *In re Holdaway*, 388 B.R. at 778–79.

    3.   Application of Owelty and Embezzlement

The complaint states that Shayne fraudulently obtained Kimberly's property interests in the Green Street and 14th Street properties. Kimberly alleges, in effect, that Shayne's conduct of taking the properties without satisfying her community interests as directed by the divorce decree and then disposing of the properties without accounting back to her means he embezzled from her. To further underscore Shayne's wrongful acts, Kimberly notes that she was not represented by counsel at the time she signed the deeds conveying her ownership in each of the properties to Shayne.

The Court has held that a divorce decree is not an agreement or representation made by an ex-spouse and, therefore, the failure to place a lien on property as directed by a divorce decree does not support the fraud element of a § 523(a)(4) claim. *Green v. Sirmons (In re Sirmons)*, No. 05-5043, 2006 WL 6508272, at *2 (Bankr. N.D. Tex. Apr. 27, 2006) (finding ex-wife's claim to be dischargeable where divorce court and decree directed ex-husband to sign a promissory note to secure ex-wife's equitable lien on the house and truck, which was not executed, and ex-husband sold the truck before filing for bankruptcy without paying ex-wife her share).

The divorce decree states that Kimberly "is divested of all right, title, interest, and claim in and to [the Green Street and 14th Street properties]." Def.'s Ex. 1 at 32 (Divorce Decree). Kimberly was divested of her ownership interests by the divorce court.

    (a.)  Green Street Property Sale

The complaint states that Shayne was awarded the Green Street property and was to compensate Kimberly for her interest in the property in one of two ways: he was to either pay

Kimberly $6,420 or sell the property and split the proceeds with her evenly. Shayne then sold the property but realized no proceeds from the sale; there was nothing for Shayne to split with Kimberly. The allegations of the complaint fail to assert a cognizable claim for embezzlement for the Green Street property.

      (b.) Transfer of 14th Street from Shayne to His Mother

Under Texas law, an owelty-of-partition lien does not preserve the lienholder's ownership interest in the property but rather evidences the lienholder-spouse's "relinquishment of his or her interest in the marital estate" because the lien secures the other spouse's "obligation to pay a monetary award" that was awarded in exchange for releasing ownership interest. *Magallanez v. Magallanez*, 911 S.W.2d at 94. The divorce decree expressly states that Kimberly "is divested of all right, title, interest, and claim in and to [the] property." Def.'s Ex. 1 at 32 (Divorce Decree). Because Kimberly no longer owned the property and the divorce court awarded ownership to Shayne, Kimberly's rights to the property were limited to the rights of someone with a purchase money or vendor's lien.

As Kimberly did not have an ownership interest in the 14th Street property, can she have a viable claim for embezzlement based on her lien status? Although there is not a Texas case that concerns an embezzlement claim arising from an owelty lien, it is established in Texas bankruptcy courts that a security interest or lien on property is not sufficient to support a claim for embezzlement when the debtor sells the property and fails to pay the lienholder. In general, "where a creditor holds nothing more than a security interest in a debtor's property, the relationship is insufficient to support a finding of embezzlement." *In re Barnes*, 369 B.R. at 305 (quotation marks omitted).[11] Thus, "when [an owner of collateral] sells the collateral and fails to

---

[11] Courts outside Texas have similarly held as such. *See, e.g.*, *Kraus Anderson Cap., Inc. v. Bradley (In re Bradley)*, 507 B.R. 192, 200 (B.A.P. 6th Cir. 2014) ("As owner of the collateral, the debtor remained the owner of its proceeds,

13

remit the proceeds to the lienholder, [he] has not embezzled funds from the lienholder" because the collateral was not owned by the lienholder. *Id.* at 306; *see also Austin Bank, Tex. N.A. v. Jacobs (In re Jacobs)*, No. 10-6005, 2011 WL 1299690, at *9 (Bankr. E.D. Tex. Apr. 1, 2011) ("It is widely recognized that one cannot embezzle one's own property . . . a debtor that misappropriates a creditor's collateral, and uses it for purposes other than repaying the creditor's loan, does not steal or embezzle that property. The actions may be a breach of contract, or even conversion, but not embezzlement or larceny under § 523(a)(4)." (quotation and citations omitted)).[12]

      A bankruptcy court in another circuit recently faced an almost identical question as before this Court: whether the debtor had embezzled sale proceeds subject to an equitable lien created from a divorce decree. *Fiebelkorn v. Cooke (In re Cooke)*, No. 18-00519, 2020 WL 3256805 (Bankr. D. Ariz. June 15, 2020). In *Cooke*, an ex-wife had been awarded the marital home in the divorce and the ex-husband was to receive almost $69,000 for his interest in the home. The divorce decree also stated that the ex-husband had to immediately sign a quit-claim deed to the marital home; the ex-wife was not to receive the deed until she had removed the ex-husband's name from the mortgage and paid him the $69,000. But the ex-husband signed and gave the quit-claim deed to the ex-wife before she paid him. The ex-wife recorded the deed and sold the home without ever paying the ex-husband his share of the proceeds. She then filed chapter 13 bankruptcy. The ex-husband brought a nondischargeability action against the debtor/ex-wife, arguing that the use of the quit-claim deed was an act of embezzlement because

---

even though both the collateral and its proceeds were subject to a security interest. No person can embezzle from himself.") (quoting *Deere & Co. v. Contella (In re Contella)*, 166 B.R. 26, 30 (Bankr. W.D.N.Y. 1994)).

[12] Cases that did not find embezzlement under § 523(a)(4) have found, in certain circumstances, that the debt owed to creditors with a security interest in a debtor's property that the debtor subsequently disposed of without compensating the lienholder to be nondischargeable under § 523(a)(2)(A) or (a)(6). *See, e.g.*, *In re Stollman*, 404 B.R. 244 (Bankr. E.D. Mich. 2009); *Goss v. Parkins (In re Parkins)*, No. 12-5025, 2012 WL 7749187 (Bankr. E.D. Tenn. Dec. 7, 2012).

14

the debtor never intended to pay him.  Interestingly, the debtor testified that she had intended to pay her ex-husband until she learned a few months before filing chapter 13 that his claim could be discharged in chapter 13.  The court determined the claim was dischargeable because the debtor owned the marital home free and clear of any ownership claims by the plaintiff; she had been awarded ownership of the home, and plaintiff, unfortunately and unwisely, had failed to adequately protect his rights to payment.

Like the *Cooke* case, the divorce decree here awarded the properties to Shayne free of any ownership claims of Kimberly.  The monetary award granted to Kimberly was ostensibly secured by an owelty lien that was never documented and filed of record, thereby allowing Shayne to sell the property without compensating her.

Courts within the Fifth Circuit hold that a security interest in property is not a sufficient interest to create an embezzlement claim under the Code.  The Court conceives of no reason why an owelty lien should be treated differently.  Kimberly did not have any ownership interest in the 14th Street property, and her unrecorded lienholder status does not create a property interest sufficient to support an embezzlement claim.[13]

V.

Conclusion

The Court grants the motion to dismiss.  Embezzlement requires that the debtor appropriate the plaintiff's property.  Here, Kimberly alleges that Shayne embezzled her property

---

[13] Though the Court concludes that embezzlement cannot arise from the facts here, it notes that some courts have found that the conversion of proceeds that are subject of a creditor's *perfected security interest* may constitute embezzlement.  *See Jones v. Hall (In re Hall)*, 295 B.R. 877, 882 (Bankr. W.D. Ark. 2003); *Universal Pontiac-Buick-GMC Truck Inc. v. Routson (In re Routson)*, 160 B.R. 595, 610–11 (Bankr. D. Minn. 1993) (debtor's sale of vehicles subject to floor plan agreement with creditor was embezzlement); *In re Harrell*, 94 B.R. 86, 91 (Bankr. W.D. Tex. 1988) (determining that the debtor had appropriated the creditor's property "by failing to immediately and directly remit" the sales proceeds to creditor); *In re Beasley*, 62 B.R. 653, 655 (Bankr. W.D. Mo. 1986) (sale of grain subject to a perfected security interest constituted embezzlement); *Chrysler Credit Corp. v. Freeman (In re Freeman)*, 30 B.R. 704, 708 (Bankr. W.D. La. 1983) (sale of vehicles subject to floor plan agreement ruled to be embezzlement).

interest in the Green Street property and the 14th Street property, both of which were awarded to Shayne in their divorce. Kimberly was divested of her ownership interest in the properties. Shayne's alleged conduct, if true, was reprehensible. But it is not embezzlement.

### End of Memorandum Opinion ###